## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

**Bobby Joe Ledford Jr.**                                                                  **Plaintiff**

**v.**                              **No. 4:14-CV–680-SWW-JTK**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                                **Defendant**

### Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge

Susan W. Wright.  A party to this dispute may file written objections to this

recommendation.  An objection must be specific and state the factual and/or legal basis

for the objection.  An objection to a factual finding must identify the finding and the

evidence supporting the objection.  Objections must be filed with the clerk of the court

no later than 14 days from the date of this recommendation.[1]  The objecting party must

serve the opposing party with a copy of an objection.  Failing to object within 14 days

waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Wright

may adopt the recommended disposition without independently reviewing all of the

record evidence.

---

[1]28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2]*Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections
waives right to de novo review and to appeal magistrate judge's findings of fact).

**Reasoning for Recommended Disposition**

Bobby Joe Ledford Jr. seeks judicial review of the denial of his second application for disability insurance benefits (DIB).[3]  Ledford worked for ConAgra Foods, as a machine operator and a production weigher, for 24 years.[4]  He was terminated for absenteeism he attributes to medical problems.[5]  Ledford anticipated termination and applied for DIB before he was let go.[6]  He based disability on atrial fibrillation, migraines, sleep apnea, irritable bowel syndrome, and allergies.[7]

**The Commissioner's decision**.  After considering the application, the ALJ identified cardiovascular disorder (recurrent arrhythmias) as a severe impairment[8] and determined Ledford can do light work, to include his former job as a production weigher.[9]  Because a person who can do his past work is not disabled under social security law, the ALJ determined Ledford isn't disabled and denied the application.

---

[3]SSA record at p. 125 (applying on Mar. 6, 2012 and alleging disability beginning December 1, 2011).

[4]*Id*. at pp. 29, 31, 226, 244 & 253.

[5]*Id*. at p. 34.

[6]*Id*. at p. 40 (explaining that he felt he was getting worse and needed to do something in case he lost his job).

[7]*Id*. at p. 252.

[8]*Id*. at p. 14.

[9]*Id*. at pp. 16 & 19.

After the Appeals Council denied review,[10] the ALJ's decision became the

Commissioner's final decision for the purpose of judicial review.[11]  Ledford filed this

case to challenge the decision.[12]  In reviewing the decision, the court must determine

whether substantial evidence supports the decision and whether the ALJ made a legal

error.[13]  This recommendation explains why substantial evidence supports the decision

and why the ALJ made no legal error.

**Ledford's allegations**.  Ledford challenges the determination that he can do his

former job.  He contends the agency medical experts didn't consider enough medical

evidence to opine about his ability to work.  He claims the ALJ failed to discuss his

testimony in sufficient detail in evaluating his credibility.  He says the ALJ erred in

evaluating the effect of obesity.  He maintains the evidence is insufficient to show he

_____

[10]*Id*. at p. 1.

[11]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[12]Docket entry # 1.

[13]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

can work as a production weigher.  For these reasons, he argues substantial evidence does not support the ALJ's decision.[14]

**Applicable legal principles**.  A claimant who can do his past relevant work is not disabled under social security law.[15]  For substantial evidence to exist, a reasonable mind must accept the evidence as adequate to show Ledford can do light work, to include his past work.[16]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[17]  For the following reasons, a reasonable mind will accept the evidence as adequate to support the decision.

> 1.  **Ledford's impairments can be controlled with treatment**.  Under social security law, impairments that can be controlled by treatment or medication are not considered disabling.[18]  Ledford's primary impairment is atrial fibrillation — an abnormal heart rhythm in which the upper chambers of the heart are out of sync with the lower chambers of the heart.[19]  Atrial fibrillation is a serious condition that can cause a blood clot and lead to a stroke; however, a person "with atrial fibrillation … can live

---

[14]Docket entry # 9.

[15]20 C.F.R. § 404.1520(a)(4).

[16]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[17]20 C.F.R. § 404.1567(b)

[18]*Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[19]Lori De Milto, Atrial Fibrillation & Flutter, 1 The Gale Encyclopedia of Med. 532 (4th ed.).

a normal life for many years as long as the arrhythmia is controlled and serious blood clots are prevented."[20]  There are several treatments for atrial fibrillation: medication, cardioversion, ablation, a pacemaker or cardioverter defibrillator, and sometimes surgery.[21]

Ledford has had atrial fibrillation since May 2010.[22]  When medication therapy failed, he underwent ablation.[23]  After ablation, he continued medication therapy and returned to work, experiencing periodic dizziness.[24]  According to his cardiologist, Ledford did very well.[25]  The most recent treatment records indicate Ledford experiences intermittent atrial fibrillation.[26]  That frequency indicates his condition is controlled with treatment.  Agency medical experts limited him to light work based on atrial fibrillation.

Before he lost his job, Ledford had other problems that contributed to absenteeism — migraine headaches and diarrhea[27] — but the medical

---

[20]*Id*. at pp. 532 & 534.

[21]*Id*. at p. 533.

[22]SSA record at p. 535 (emergency room visit for hear palpitations).

[23]*Id*. at p. 686.

[24]*Id*. at p. 336 (Feb. 21, 2011: he was off work for three months, but returned after ablation, no problems since ablation), pp. 329-31 (May 20, 2011: he has dizziness every once in a while with some fatigue, but from atrial fibrillation point of view, he is doing very well without significant palpitations), p. 376 (Oct. 26, 2011: he complained about increased pulse rate, but he has been fairly well controlled with medication) & p. 317 (Apr. 9, 2012: he reports daily palpitations, but heart monitoring shows no atrial fibrillation).

[25]*Id*. at pp. 331.

[26]*Id*. at pp. 485 & 489.

[27]*Id*. at p. 39 (identifying stomach problems as affecting him most at work).

evidence shows those problems can be controlled with treatment.[28]  As such, those problems provide no basis for disability.

2.  **The alleged onset date undermined Ledford's credibility**.  A claimant engaging in substantial gainful activity (SGA) is not eligible for DIB.[29]  SGA "is work activity that is both substantial and gainful…."[30]  Earnings derived from work activity is the primary consideration in determining whether a claimant engages in SGA.[31]  Even part-time work may qualify as SGA.[32]

Ledford claims he has been disabled since December 1, 2011, but the evidence shows he engaged in SGA through January 2012.[33]  Engaging in SGA during a time period he claims he was disabled undermined

---

[28]*Id*. at p. 306 (Mar. 12, 2012: second Botox injection helped headaches for about six weeks, will repeat today with some in neck muscles), p. 718 (Mar. 16, 2012: less diarrhea), p. 719 (Apr. 9, 2012: diarrhea somewhat improved with Lomotil), p. 704 (June 13, 2012: increase dosage of Depakote and Botox injections have improved headaches) & p. 485 (Nov. 15, 2012: reporting occasional diarrhea).

[29]20 C.F.R. § 404.1520(a)(4).  *See also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011).

[30]20 C.F.R. § 404.1572.

[31]20 C.F.R. § 404.1574(a).  Earnings constituting SGA are set out in the SGA Table, available at  http://www.socialsecurity.gov/OACT/COLA/sga.html.

[32]*See* 20 C.F.R. § 404.1572(a) ("Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a parttime basis or if you do less, get paid less, or have less responsibility than when you worked before."); *Burkhalter v. Schweiker*, 711 F.2d 841, 844-45 (8th Cir. 1983) (upholding the Commissioner's regulations specifying what work constitutes substantial gainful activity).

[33]SSA record at p. 224 ("Even though he missed some work, his earnings were still over SGA in 12/11 and 01/12.").  *See id*. at pp. 132-43 & 173-211.  Ledford worked on and off until he was terminated in July 2012 for absenteeism, after exhausting his FMLA leave.

Ledford's credibility.  Ledford challenges the evaluation of his credibility, but the inconsistency between his alleged onset date and his work history weighs against his claim.[34]

In his first application, Ledford alleged disability beginning October 1, 2010,[35] but since then, he worked full-time as a production weigher — working 55 hours per week.[36]  The unfavorable decision doesn't specifically mention the first alleged onset date, but the ALJ observed that Ledford continued to work full-time despite medical issues since that time.[37]

Ledford says the ALJ should have discussed his testimony in more detail, but the ALJ followed the required process, acknowledged Ledford's allegations, discussed how treatment controls his medical conditions, and explained why the medical evidence doesn't support the alleged degree of severity.[38]  Ledford's strong reliance on *Polaski v. Heckler*[39] is somewhat mis-placed because the Commissioner's rule for evaluating credibility

---

[34]*Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011) ("The ALJ may discredit a claimant based on inconsistencies in the evidence."); *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) ("The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole.").

[35]SSA record at p. 156.

[36]*Id.* at pp. 227, 245 & 253

[37]*Id.* at pp. 17-18.

[38]*Id.* at pp. 18-19.

[39]In *Polaski*, the Eighth Circuit set forth for evaluating subjective allegations: (1) the claimant's prior work record; (2) observations by third parties and treating and examining physicians relating to such matters as: (a) the claimant's daily activities; (b) the duration, frequency and intensity of the pain; (c) precipitating and aggravating factors; (d) dosage, effectiveness and side effects of medication; and (e) functional restrictions.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

includes *Polaski's* guidance.[40]   The ALJ followed the rule.

3.  **The record was fairly and fully developed**.  Two agency medical experts opined that Ledford can do light work,[41] but Ledford contends later-acquired evidence undermines the opinions.  He claims the record wasn't fairly and fully developed because the agency experts did not review the later-acquired evidence.[42]

A claimant who claims the ALJ failed to adequately develop the record bears a heavy burden; the claimant "must show both a failure to develop necessary evidence and unfairness or prejudice from that failure."[43] Ledford can't show unfairness or prejudice because the relevant evidence shows nothing preventing light work.

Most of the later-acquired evidence doesn't address the time period for which benefits were denied.[44]  Thus, that evidence provides no basis for showing unfairness or prejudice.[45]

The remainder of the later-acquired documents treatment of diarrhea,[46]

---

[40]*See* SSR 96-7p, *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

[41]SSA record at pp. 463 & 473.

[42]*Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974) (ALJ must fairly and fully develop record as to matters at issue).

[43]*Combs v. Astrue*, 243 Fed. App'x 200, 205 (8th Cir. 2007).

[44]SSA record at pp. 498-702.

[45]*Roberson v. Astrue*, 481 F.3d 1020, 1026 (8th Cir. 2007) (to be material, evidence must relate claimant's condition for time period for which benefits are denied).

[46]SSA record at p. 707 (Dec. 7, 2011: consult with gastroenterologist), p. 709 (Dec. 15, 2011: followup with gastroenterologist, work up uneventful thus far), p. 716 (Jan. 11, 2012: followup with gastroenterologist; diagnostic testing shows no evidence of celiac disease, microscopic colitis, or inflammatory bowel disease), p. 717 (Feb. 23, 2012:

management of anticoagulation medication,[47] and improvement in migraines.[48]  It documents nothing preventing light work.

Ledford suggests the ALJ should have asked a mental health expert to review his case, but Ledford didn't base his claim on mental impairment; he reported good results from a prescribed anti-depressant.[49]  No need existed for a mental health review because no evidence implicated a severe mental impairment.[50]

4.  **The ALJ followed the rule in considering obesity**.  Ledford claims the ALJ failed to comply with the Commissioner's rule on obesity in determining his ability to work, but the unfavorable decision belies the claim.  The rule states, "An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement

---

patient stopped milk, try stopping Diet Coke and Nexium), p. 718 (Mar. 16, 2012: stopping Nexium and milk didn't help, decreasing Diet Coke didn't help, cause of diarrhea isn't clear), p. 719 (Apr. 9, 2012: normal 24-hour urine test, diarrhea has improved with Lomotil, need stool study for fecal electrolytes and stool osmolality), p. 720 (May 11, 2012: stool specimen was unsatisfactory so stool study wasn't completed, cause not yet determined), p. 721 (May 24, 2012: cause might be food allergies or medication related, fast for 12 hours during the day to see if diarrhea occurs, may need further work up), p. 722 (June 25, 2012: don't think cause is medication related, two episodes during 12-hour fast, try Flagyl for 10 days, if continues, will do 72-hour fecal fat collection or trial of pancreatic supplements) & p. 722 (July 25, 2012: no show for visit with gastroenterologist).

[47]*Id*. at 723-33.

[48]*Id*. at p. 704 (third Botox injection helped for about eight weeks, increased dose of Depakote is helping, headaches improving with Botox injections).

[49]*Id*. at p. 493 (Jan. 3, 2013: anti-depressant is working well).

[50]*Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012) ("If sufficient evidence alerts the ALJ to the possibility of a severe mental impairment, the ALJ must further develop the record about mental impairments before ruling on the severity of the claimant's impairment(s)." ).

and necessary physical activity within the work environment."[51]  The following statement reflects the assessment: "The evidence does not show that the condition limits the claimant's walking, standing, and lifting, or have adverse effects on other body systems."[52]  Ledford's doctors recommended weight loss, but no evidence suggests obesity interferes with his ability to perform routine movement and necessary physical activity within the work environment.

5.  **Vocational evidence supports the decision**.  After determining the claimant's ability to work, the ALJ determines whether the claimant can do his past work.[53]  To do so, the ALJ consults a vocational expert or another resource like the Dictionary of Occupational Titles (DOT).[54]  A vocational expert may offer relevant evidence about the demands of the claimant's past work, "either as the claimant actually performed it or as generally performed in the national economy."[55]

In this case, the ALJ questioned a vocational expert about Ledford's past work.  According the vocational expert, the DOT classifies Ledford's past jobs — machine operator and production weigher — as medium work, but Ledford performed the production weigher job as light work.  Light work is consistent with the ALJ's determination about Ledford's ability to work.

Ledford relies on his agency pleadings[56] to argue that he worked at a higher exertional level, but Ledford's testimony was clear.  When asked about the lifting requirement of his job as a machine operator as compared to his job as a production weigher, Ledford testified, "I didn't probably lift

---

[51]SSR 02-1p, *Pol'y Interpretation Ruling Titles II & XVI: Evaluation of Obesity* ¶ 8.

[52]SSA record at p. 15.

[53]20 C.F.R. § 404.1560.

[54]*Id*.

[55]*Id*.

[56]SSA record at pp. 227, 245 & 254.

over 10 pounds."[57]  This testimony indicates earlier reports of lifting more weight applied to his job as a machine operator.

According to the vocational expert, the production weigher job is "classified as medium, but [Ledford] described in his particular situation it was less than that by quite a bit. ... So he performed it at the light level even though the DOT lists them at a medium level"[58]  This explanation indicates Ledford can work as a production weigher as he actually performed it.  The evidence supports the decision.

### Conclusion and Recommended Disposition

Substantial evidence supports the ALJ's decision because a reasonable mind will accept the evidence as adequate to support the decision.  The record shows nothing preventing past work.  The ALJ made no harmful legal error.  For these reasons, the undersigned magistrate judge recommends DENYING Ledford's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

Dated this 22nd day of September, 2015.

_____
United States Magistrate Judge

---

[57]*Id*. at p. 32.

[58]*Id*. at pp. 32-33.